ECF ORIGINAL

JAMES GEAGAN (SBN 68922)
LAW OFFICES OF JAMES GEAGAN
846 Broadway
Sonoma, CA 95476

Telephone: (707) 939-9593
Facsimile: (707) 996-2460

Attorney for Plaintiffs

FILED
OCT 31 2003
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATED COURT OF FEDERAL CLAIMS

BRUCE RUTTENBURG,

Plaintiff,

v.

UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, INDIAN HEALTH SERVICES, INDIAN HEALTH SERVICE LOAN REPAYMENT PROGRAM,

Defendants.

No. 03-2523C

COMPLAINT FOR BREACH OF CONTRACT/SPECIFIC PERFORMANCE/EQUITABLE RELIEF

Plaintiff Bruce Ruttenburg complains of defendants United States of America, the United State Department of Health and Human Services, Indian Health Services and Indian Health Services Loan Repayment Program, and each of them, and for cause of action alleges:

**JURISDICTION**

1. Jurisdiction is based upon 28 USC §1346 as defendants are the United States of America and its departments, agencies and subdivisions.

///

///

///

## FACTUAL ALLEGATIONS

2. Plaintiff Bruce Ruttenburg is a resident of the State of Alaska. At the time of the conduct which established a binding contract between plaintiff and defendants, plaintiff resided in the County of Sonoma, State of California, a place located within the Northern District of the U.S. Federal Court.

3. In 1997, plaintiff Bruce Ruttenburg was a licensed psychologist in the State of California in private practice in Santa Rosa, California. In or about October 1997, plaintiff applied for eligibility as a participant psychologist with the Indian Health Service Loan Repayment Program (IHSLRP), a division of the Indian Health Service (IHS) governed by the U.S. Department of Health and Human Services. Said program provided to health care professionals, inter alia, an annual amount of repayment on Federal, State, or commercial education loans owed by them in return for the provision by said health care professionals of full time clinical service in an Indian health program. Each year of such service would entitle participants to the repayment of said loans by the amount designated as the annual amount.

4. Plaintiff did not participate in the IHSLRP in 1997 or 1998. However, his application for participation was maintained on file with IHSLRP and considered active for consideration for service in 1999.

5. On or about March 1999, the Maniilaq Association located in Kotzebue, Alaska, contacted plaintiff concerning an available psychologist position with that organization. Plaintiff considered accepting that position as a means of participating in the IHSLRP.

6. On or about March 1999, defendants through their agent and employee, Carla Mendoza, orally offered plaintiff a contract in connection with his accepting a full time position as a psychologist at Maniilaq in Kotzebue, Alaska. Said offer was as follows: If plaintiff would accept employment with the Maniilaq Association as a full time psychologist, IHSLRP would pay on his behalf, in addition to any salary or benefits from Maniilaq, $30,000 per year toward plaintiff's educational loan balance plus 31% of that amount to be paid as federal income taxes on his behalf. Said offer contained the provision that IHSLRP would not

be obligated to pay said sums to or on behalf of plaintiff if either of two events did not occur: 1) Congress did not allocate funding for the IHSLRP for the next year; or 2) the Maniilaq site was not accepted as an approved site under the IHSLRP. The offer further provided that if plaintiff commenced working at Maniilaq on July 1, 1999, he would be provided with a written contract to sign embodying the aforesaid terms of the agreement on or about January 1, 2000 and his loan repayment benefits would begin accruing as of that date. It was represented that benefits would not be paid during the year 1999 because the funding for the program for that year had been exhausted.

7. On or about April 1999 in Santa Rosa, California, plaintiff orally accepted the offer tendered by defendants and agreed to accept employment with Maniilaq in Kotzebue, Alaska. Plaintiff, in reliance upon the contract, closed his practice in Santa Rosa, California, vacated his residence in Sonoma County, California and moved his residence to Kotzebue, Alaska in May and June of 1999.

8. Subsequent to plaintiff's acceptance of said offer and his relocating to Alaska, Congress did approve expected funding for IHSLRP and the Maniilaq site was certified as an approved site under IHSLRP.

9. Pursuant to his agreement with defendants, plaintiff commenced rendering full time services as a psychologist for Maniilaq Association on July 1, 1999 and carried out all of the obligations of his agreement with defendants throughout the remainder of that year.

10. In August 1999, at a time where he had been and was carrying out his agreed duties under the aforementioned contract, plaintiff was informed that the written contract with which he would be presented for the year 2000 would provide that the IHSLRP loan repayment annual amount would be $20,000 plus 20% of that amount to be paid for federal taxes, pursuant to a change in the program. Plaintiff protested the purported unilateral change in the terms of the oral agreement into which he had entered with defendants. In particular, plaintiff pointed out that because IHSLRP funds are completely distributed at the beginning of each year, an interested applicant must already be working at a qualified site at the commencement

of the year in order to be eligible for inclusion in the program. Thus, plaintiff had been required to begin his work at Maniilaq before signing a contract. Despite these protests, defendants refused to reaffirm the contract and expressed the intent not to abide by the terms of their oral contract with plaintiff.

11. On December 15, 1999, plaintiff's attorney wrote to Charles Yepa, an employee and agent of defendants, delineating that defendants proposed conduct in unilaterally decreasing plaintiff's loan repayment benefits would amount to a breach of their agreement with plaintiff and describing plaintiff's substantial change in position in rebance upon the contract. Said letter stated that legal action would be commenced if plaintiff were not paid the agreed upon loan repayment amount of $30,000 and 31%.

12. After received no response to the aforementioned letter, plaintiff was presented with a purported written contract by defendants in February 2000 which included a deadline for signature of February 29, 2000 and a notice that a failure to sign would be considered a declination of the right to participate in IHSLRP. Because he had already relocated to Alaska and commenced his duties with Maniilaq, plaintiff concluded that he had no choice but to sign the contract or lose any benefit form IHSLRP. Plaintiff would not have consented to move to Alaska and accept a position with Maniilaq had he not been promised a $30,000 plus 31% loan repayment benefit.

13. Thereafter, in the year 2000, plaintiff received notice as to the amount of the loan repayment benefits which had been paid on his behalf by IHSLRP. Plaintiff was advised that $30,000 in loan repayment had been made and a 31% payment for federal taxes had also been made. Plaintiff justifiably concluded that defendants had reaffirmed the oral contract into which they had entered and intended to carry out their obligation under that contract.

14. Plaintiff thereafter continued to carry out all of his obligations under the oral agreement entered into with defendants. Plaintiff continued to carry out his obligations at Maniilaq in the year 2001. In June 2001, plaintiff was notified by defendants that they had made a "mistake" in repayment benefits in 2000 and had "overpaid" plaintiff in that year.

They, therefore, advised that plaintiff would be forwarded a purported written contract for the year 2001 which would provide for a $20,000 loan repayment and 20% tax payment, but that the "overpayment" would be deducted from these benefits. Defendants thereafter forwarded approximately $8,700 in loan repayment and no tax payment on plaintiff's behalf for the year 2001.

## FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

15. Plaintiff has continued and continues to carry out all of his obligations pursuant to the original oral agreement. He has signed documents covering subsequent years and the current year which purport to be contracts providing for the reduced reimbursement, but has only done so and continues to do so because he has no practical alternative while the within dispute remains unresolved.

16. Plaintiff and defendants entered into an oral contract in April 1999. Plaintiff substantially changed his position to his detriment in reliance upon said contract.

17. Plaintiff carried out all of the terms and obligations of said contract and all conditions which were required to be fulfilled in order for the contract to be valid were fulfilled.

18. Defendants breached their obligations under said contract after June 2001 by refusing to pay the financial benefits in the form of loan repayments and tax payments which they had agreed to pay.

19. By reason of defendants' breach of contract, plaintiff has suffered damage and will continue to do so. Plaintiff has been deprived of approximately $61,200 in loan repayment and tax benefits to date and has been required to incur interest on that amount in the form of an unpaid amount on his educational loans. Plaintiff will continue to incur financial losses at the rate of approximately $15,300 per year plus interest for as long as he continues in his position at Maniilaq. It is the custom and practice of IHSLRP and a normal provision of contracts between IHSLRP and its participants that said participants may renew their contracts year to year at the benefit rate of their original contract as long as they remain eligible for the program,

but may not renew in any year beyond the date in which their loan is fully paid.

**SECOND CAUSE OF ACTION**
**FOR SPECIFIC PERFORMANCE**

As and for a separate Second and Distinct Cause of Action, plaintiff complains of defendants, and each of them, as follows:

20. Plaintiff hereby incorporates the allegations of the preceding paragraphs and makes them a part of this, the Second Cause of Action, as though fully set out herein.

21. In reliance upon promises and representations made by defendants, including but not limited to, representations and promises that after commencing his duties at Maniilaq, plaintiff would be presented a contract to sign that would provide for a repayment benefit of $30,000 and a tax payment of 31% of that total, plaintiff closed his business and moved to Alaska. But for defendants' promises and representations, plaintiff would not have done those things.

22. Plaintiff has substantially and detrimentally relied upon the aforesaid promises and representations of defendants. If defendants are not compelled to carry out their promises and representations, they will be unjustly enriched and plaintiff will have suffered and will continue to suffer irreparable damage. Justice and equity require an order of this Court compelling defendants to perform those acts which they promised and represented they would carry out.

Wherefore, plaintiff prays for judgment as follows:

(1) Monetary damages in the amount of $61,200 through December 31, 2003.

(2) Interest on said sum at the legal rate of interest as it accrued.

(3) An order of this Court compelling performance of promises, representations, and contracts obligating defendants to pay on plaintiff's behalf $30,000 in loan repayment and 31% of that sum in federal tax payments for as long as plaintiff continues to be a participant in the IHSLRP at Maniilaq Association, Kotzebue, Alaska.

(4) Costs of suit herein incurred.

(5) Such other and further relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all issues permitted by law to be heard by a jury.

Dated: October 27, 2003

James Geagan