No. 03-2523C
Judge Williams

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

BRUCE RUTTENBURG,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DEBORAH A. BYNUM
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 307-1011

February 27, 2004

Attorneys for Defendant

# TABLE OF CONTENTS


PAGE

STATEMENT OF THE ISSUES . . . . . 1

STATEMENT OF THE CASE . . . . . 2

- I. Nature of the Case . . . . . 2
- II. Statement of Facts . . . . . 3

ARGUMENT . . . . . 6

- I. Standard of Review . . . . . 6
- II. Mr. Ruttenburg Has Failed to State a Claim Upon Which Relief May Be Granted . . . . . 8
  - A. The Elements of a Valid Breach of Contract Claim . . . . . 8
  - B. The Indian Health Care Improvement Act Requires That All Loan Repayment Agreements Be In Writing and Be Approved by the Secretary . . . . . 9
  - C. Even If IHS Had The Authority To Enter Into An Oral Agreement With Mr. Ruttenburg, Such Oral Agreement Between The Parties Would Be Invalid And Unenforceable . . . . . 12
- III. The Court Lacks Tucker Act Jurisdiction To Entertain the Second Count (Specific Performance) of Mr. Ruttenburg's Complaint . . . . . 13

CONCLUSION . . . . . 14

## TABLE OF AUTHORITIES

CASES: PAGE(S)

Alder Terrace, Inc. v. United States, 161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 6

Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 428 F.2d 1241 (1970) . . . . . . . . . . . . . . . . 12

American Gen. Leasing, Inc. v. United States, 218 Ct.Cl. 367, 587 F.2d 54 (1978) . . . . . . . . . . . 9

American Nat'l Bank & Trust Co. v. United States, 22 Cl. Ct. 7, 18 (1990) . . . . . . . . . . . . . . . . 6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Bowen v. United States, 49 Fed. Cl. 673 (2001), aff'd, 292 F.3d 1383 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CACI, Inc. v. Stone, 990 F.2d 1233 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

City of El Centro v. United States, 922 F.2d 816 (Fed. Cir. 1990), cert. denied, 501 U.S. 1230 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Dynalectron Corp. v. United States, 4 Cl. Ct. 424, aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fidelity Construction Co. v. United States, 700 F.2d 1379 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

First Hartford Corp. v. United States, 194 F.3d 1279 (Fed. Cir.1999) . . . . . . . . . . . . . . . . . . . . 14

Gould, Inc. v. United States, 935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Habermann v. United States, 26 Cl. Ct. 1405 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429 (Fed. Cir. 1998), cert. denied, 525 U.S. 1177 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hazeltine Corp. v. United States, 10 Cl Ct. 417 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Jascourt v. United States, 207 Ct. Cl. 955, 956, cert. denied, 423 U.S. 1032 (1975) . . . . . . . . . . 9

Juda v. United States, 6 Cl. Ct. 441 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kinne v. United States, 21 Cl. Ct. 104 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

McCloskey v. United States, 66 Ct. Cl. 105 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . 6

Mingus Constructors, Inc. v. United States, 812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . 7

New Am. Shipbuilders, Inc. v. United States, 871 F.2d 1077 (Fed. Cir. 1989) . . . . . . . . . . . . . 10

Paxson Electric Company, Inc. v. United States, 14 Cl. Ct. 634 (1988) . . . . . . . . . . . . . . . . . . . . 7

Prestex, Inc. v. United States, 162 Ct. Cl. 620, 320 F.2d 367 (1963) . . . . . . . . . . . . . . . . . . . 9, 12

Rochman v. United States, 27 Fed. Cl. 162 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Scheuer v. Rhodes, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . 7, 8

Trauma Serv. Group v. United States, 104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . 6, 8

United States v. King, 395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Mitchell, 445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

United States v. Testan, 424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

STATUTES:

25 U.S.C. § 1616a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 11

28 U.S.C. § 1346 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 14

REGULATORY DOCUMENTS:

Availability of Funds for Loan Repayment of Program for Repayment of Health Professions Educational Loans, 63 Fed. Reg. 54,483 (Oct. 9, 1998) . . . . . . . . . . . . . . . . 11

Availability of Funds for Loan Repayment of Program for Repayment of Health Professions Educational Loans, 64 Fed. Reg. 53,681 (Oct. 4, 1999) . . . . . . . . . . . . . . 4, 11

MISCELLANEOUS:

RCFC 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

RCFC 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

RCFC 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

R. NASH, JR. & J. CIBINIC, JR., FORMATION OF GOVERNMENT CONTRACTS
(2d ed. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BRUCE RUTTENBURG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2523C |
| | ) | (Judge Williams) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(6) and 56 of the Rules of United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted or, in the alternative, enter summary judgment in its favor because there are no genuine issues of material fact in dispute and defendant is entitled to judgment as a matter of law. In the event that the Court does not dismiss plaintiff's complaint in its entirety, the defendant respectfully requests that the Court dismiss the second count of plaintiff's complaint (specific performance) for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

In support of defendant's motion, we rely upon the complaint, the following brief, and the attached appendix.

STATEMENT OF THE ISSUES

1. Whether this Court must dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted, because plaintiff has failed to allege the elements of a valid breach of contract claim.

2. In the alternative, whether this Court must enter summary judgment in favor of the defendant because there are no genuine issues of material fact in dispute and defendant is entitled to judgment as a matter of law.

3. In the event that the Court does not dismiss plaintiff's complaint in its entirety, whether this Court must dismiss the second count plaintiff's complaint (specific performance) for lack of subject matter jurisdiction.

## STATEMENT OF THE CASE

### I. Nature of the Case

Plaintiff, Bruce Ruttenburg ("Mr. Ruttenburg") brings this action pursuant to the Tucker Act, 28 U.S.C. § 1491, alleging the breach of an implied-in-fact contract with the United States.[1] Specifically, Mr. Ruttenburg asserts that an official with the Indian Health Services Loan Repayment Program ("IHS LRP") orally promised that, in exchange for Mr. Ruttenburg taking a position as a full time psychologist with the Maniilaq Association in Kotzebue, Alaska, IHS LRP would pay Mr. Ruttenburg $30,000 per year toward his educational loan balance plus 31 percent of that amount to be paid as income taxes on his behalf. Compl. ¶ 6. Mr. Ruttenburg seeks damages in the amount of $61,200, interest, specific performance of the alleged oral contract for "as long as plaintiff continues to be a participant in IHS LRP at Maniilaq Association," costs, and further relief as the Court may deem just. Compl. ¶ 22.

[1] Mr. Ruttenburg's complaint cites to 28 U.S.C. § 1346, a provision that provides that the United States district courts have concurrent jurisdiction (with the United States Court of Federal Claims) over certain matters, rather than 28 U.S.C. § 1491.

II. Statement of Facts[2]

Indian Health Services ("IHS") is an agency within the Public Health Service in the United States Department of Health and Human Services. The Indian Health Services Loan Repayment Program ("IHS LRP") is one of the programs administered by the IHS. See Compl. ¶ 3. IHS LRP was created pursuant to section 108 of the Indian Health Care Services Act, Pub L. No. 94-437, as amended, "in order to assure an adequate supply of trained health care professionals necessary to maintain accreditation of, and provide health care services to Indians through, Indian health programs." 25 U.S.C. § 1616a(a)(1).

On October 10, 1997, Mr. Ruttenburg submitted an application to participate in the IHS LRP. Def.'s App. at 1-12. See also Compl. ¶ 3. Included in the application packet was a draft contract, which Mr. Ruttenburg signed. Def.'s App. at 5-8. Immediately above Mr. Ruttenburg's signature, the document stated in bold, capital letters:

> I UNDERSTAND THAT ANY FINANCIAL OBLIGATION OF THE UNITED STATES ARISING OUT OF THIS CONTRACT IS CONTINGENT UPON FUNDS BEING APPROPRIATED BY CONGRESS FOR THE IHS LOAN REPAYMENT PROGRAM. THE SECRETARY OR HIS/HER AUTHORIZED REPRESENTATIVE MUST SIGN THIS CONTRACT BEFORE IT BECOMES EFFECTIVE. FURTHER, I UNDERSTAND THAT ANY INDEBTEDNESS I INCUR PRIOR TO BOTH PARTIES, THE SECRETARY AND MYSELF, SIGNING THIS CONTRACT IS MY RESPONSIBILITY.

Id. at 8. The 1997 draft contract was never signed by the Secretary of United States Department of Health and Human Services (the "Secretary") or an authorized representative of the Secretary. See id.

---

[2]For the purposes of defendant's motion to dismiss or, in the alternative, for summary judgment, defendant will treat the allegations of Mr. Ruttenburg's complaint as true. If defendant's motion to dismiss or, in the alternative, for summary judgment is denied, defendant reserves the right to contest each and every allegation of the complaint.

In March 1999, Mr. Ruttenburg alleges that he was contacted by the Maniilaq Association of Kotzebue, Alaska concerning an opening for a full-time psychologist with that organization. Compl. ¶ 5. Mr. Ruttenburg further asserts that in March 1999 he spoke with Carla Mendoza ("Ms. Mendoza"),[3] an IHS employee, about his offer from the Maniilaq Association. Compl. ¶ 6. Mr. Ruttenburg claims that Ms. Mendoza orally represented to him that if he took a job with the Maniilaq Association, IHS LRP would pay Mr. Ruttenburg $30,000 per year toward his educational loan balance plus 31 percent of that amount to be paid as income taxes on his behalf (in addition to any salary offered by the Maniilaq Association). Id. Mr. Ruttenburg concedes that he was told that he would not be eligible to participate in IHS LRP in 1999, as program funding was exhausted for the 1999 fiscal year. Id.

Mr. Ruttenburg commenced full-time employment as a psychologist with the Maniilaq Association on July 1, 1999. Compl. ¶ 9. See Def.'s App. at 13. In August 1999, Mr. Ruttenburg asserts that he was informed that the IHS LRP contract for 2000 would only provide for a payment of $20,000 per year toward his educational loan balance plus 20 percent of that amount to be paid as income taxes on his behalf, pursuant to a change in the program's structure. Compl. ¶ 10. On October 4, 1999, IHS published a notice in the Federal Register indicating that, as of FY 2000, the IHS LRP program would only provide participants with "up to $20,000 per year. . . . [plus] an additional 20 percent of the participants total loan repayments to the Internal Service for the increased tax liability." Availability of Funds for Loan Repayment of Program for Repayment of Health Professions Educational Loans, 64 Fed. Reg. 53,681, 53,682 (Oct. 4, 1999).

---

[3] Carla Mendoza now goes by the name of Carla Billingsley. For ease of identification, the Government will nevertheless refer to her by her name at the time of the purported oral representations ("Ms. Mendoza").

In February 2000, Mr. Ruttenburg was presented with a copy of the IHS LRP contract, for the period covering fiscal years 2000 through 2001. Compl. ¶ 12. Def.'s App. at 14-17. The 2000-2001 contract explicitly provided that the program would only repay $20,000 per year toward educational loan balances plus 20 percent of that amount for increased income tax liability. Id. at 14, 17. The agreement also stated in bold, immediately above the participant's signature line, that "[t]he Secretary or his/her authorized representative must sign this contract before it becomes effective. Further, I understand that any indebtedness I incur prior to both parties, the Secretary and myself, signing this contract is my responsibility." Id. at 17. On February 27, 2000, Mr. Ruttenburg signed the 2000-2001 contract. Id. On March 17, 2000, the 2000-2001 contract was signed by Phyllis Eddy, Indian Health Services, the authorized representative of the Secretary. Id.

On May 20, 2002, Mr. Ruttenburg signed a one-year contract extension for fiscal year 2002. Def.'s App. at 18-21. The 2002 contract again explicitly provided that the program will only repay $20,000 per year toward educational loan balances plus 20 percent of that amount for increased income tax liability. Id. at 18, 21. On June 3, 2002, the 2002 contract was signed by Phyllis Eddy, Indian Health Services, the authorized representative of the Secretary. Id. at 21.

On May 19, 2003, Mr. Ruttenburg signed a one-year contract extension for fiscal year 2003. Def.'s App. at 22-25. The 2003 contract also explicitly provided that the program will only repay $20,000 per year toward educational loan balances plus 20 percent of that amount for increased income tax liability. Id. at 22, 25. On June 6, 2003, the 2003 contract was signed by Phyllis Eddy, Indian Health Services, the authorized representative of the Secretary. Id. at 25.

ARGUMENT

I. Standards of Review

For the purposes of determining whether or not to grant a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the non-jurisdictional factual allegations of the complaint will be presumed true and read in the light most favorable to the plaintiff, but the burden of establishing the Court's jurisdiction nevertheless will remain squarely with the plaintiff. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Trauma Serv. Group v. United States, 104 F.3d 1321, 1324 (Fed. Cir. 1997); Bowen v. United States, 49 Fed. Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof upon a motion to dismiss for lack of jurisdiction), aff'd, 292 F.3d 1383 (Fed. Cir. 2002). Jurisdiction in this Court must be construed strictly and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980).

Pursuant to RCFC 12(b)(6), the Court may dismiss a complaint if, as a matter of law, it fails to state a claim upon which relief can be granted, even assuming the truth of its allegations. Unlike a RCFC 12(b)(1) disposition, however, "dismissal of plaintiff's complaint . . . for failure to state a claim does not have the legal effect of divesting this court of jurisdiction," and thus operates as a final adjudication, with prejudice, upon the merits. American Nat'l Bank & Trust Co. v. United States, 22 Cl. Ct. 7, 18 (1990). As the United States Supreme Court has held, dismissal for failure to state a claim is appropriate whenever "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In resolving a motion to dismiss for failure to state a claim, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Kinne v. United States, 21 Cl. Ct. 104, 107 (1990) (quoting Scheuer, 416 U.S. at 236). Thus, the Court "must . . . indulge in all reasonable inferences in favor of the nonmovant." Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). Nonetheless, the Court should not place any weight upon any assertions in the complaint other than allegations of fact, because "legal conclusions, deduction, or opinions couched as factual allegations are not given a presumption of truthfulness." Rochman v. United States, 27 Fed. Cl. 162, 168 (1992) (citation omitted).

In the event that the Court determines that the Government's motion is more properly considered to be a Motion for Summary Judgment pursuant to RCFC 56, the applicable standard of review is as set forth below. This Court has consistently held that when there is no genuine dispute regarding a material fact, and the moving party is entitled to judgment as a matter of law, a motion for summary judgment will be granted. See Paxson Electric Company, Inc. v. United States, 14 Cl. Ct. 634, 642 (1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)); accord Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A genuine dispute exists where the Court could render a verdict in favor of the non-movant, based upon the evidence. See Anderson, 477 U.S. at 248; Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

For the United States to prevail upon its motion for summary judgment, the Government only must demonstrate its entitlement to judgment as a matter of law, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. See Anderson, 477

U.S. at 248. Mr. Ruttenburg must then present sufficient evidence to establish that there is a genuine dispute, which would enable him to prevail at trial. See Anderson, 477 U.S. at 247-48; Sweats Fashions, 833 F.2d at 1562-3. Here, there is no genuine dispute between the parties regarding any material fact, and upon the undisputed facts of record, the United States is entitled to judgment as a matter of law.

## II. Mr. Ruttenburg Has Failed to State a Claim Upon Which Relief May Be Granted

### A. The Elements of a Valid Breach of Contract Claim

To state a valid breach of contract claim, Mr. Ruttenburg must allege (1) the existence of either an express or implied-in-fact contract requiring IHS LRP to pay him $30,000 per year toward his educational loan balance plus 31 percent of that amount to be paid as income taxes on his behalf, (2) a breach of that contract, and (3) resultant damages. The general requirements for a binding contract with the United States are identical for both express and implied-in-fact contracts. Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997).

To establish the existence of an express or implied-in-fact contract with the United States, plaintiff must demonstrate: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) "the Government representative 'whose conduct is relied upon [had] actual authority to bind the [G]overnment in contract.'" City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990) (quoting Juda v. United States, 6 Cl. Ct. 441, 452 (1984)), cert. denied, 501 U.S. 1230 (1991). It is well settled that actual authority to contract is required to form a contract binding on the United States, and "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the

Government stays within the bounds of his authority." Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947).

Mr. Ruttenburg's complaint fails to establish the existence of a valid contract, and thus does not meet the requirements for a valid breach of contract claim.

B. The Indian Health Care Improvement Act Requires That All Loan Repayment Agreements Be In Writing and Be Approved by the Secretary

It is well settled that the United States is only contractual bound by the actions of a Government agent with actual authority to enter into a binding contract in its behalf.

> It is a well recognized principle of procurement law that the contracting officer, as agent of the executive department, has only that authority actually conferred upon him by statute or regulation. If, by ignoring statutory and regulatory requirements, he exceeds his actual authority, the Government is not estopped to deny the limitations on his authority, even though the private contractor may have [relied] on the contracting officer's apparent authority to his detriment, for the contractor is charged with notice of all statutory and regulatory limitations.

CACI, Inc. v. Stone, 990 F.2d 1233, 1236 (Fed. Cir. 1993), quoting Prestex, Inc. v. United States, 162 Ct. Cl. 620, 625, 320 F.2d 367, 371 (1963); see Federal Crop, 332 U.S. at 384; Jascourt v. United States, 207 Ct. Cl. 955, 956, cert. denied, 423 U.S. 1032 (1975); R. NASH, JR. & J. CIBINIC, JR., FORMATION OF GOVERNMENT CONTRACTS 64 (2d ed. 1986).

More specifically, the authority of a Government employee to enter into an oral contract may be limited by statute or regulation. See, e.g., Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998), cert. denied, 525 U.S. 1177 (1999) (contracting officer's delegation of authority did not include implied authority to enter into unilateral oral contract); American Gen. Leasing, Inc. v. United States, 218 Ct.Cl. 367, 587 F.2d 54, 57-58 (1978) (holding that express oral agreement with Government agent was not binding because,

among other reasons, the applicable regulations required that a contract be in writing). See also New Am. Shipbuilders, Inc. v. United States, 871 F.2d 1077, 1080 (Fed. Cir. 1989) (holding that oral assurances did not give rise to a contract implied-in-fact where all the steps in the agency's required procedure where completed, until such time there was no evidence of intent to be bound).

In the present case, the Indian Health Care Improvement Act, as amended, explicitly requires that all contracts made pursuant to IHS loan repayment program be in writing. According to the statute, "an individual becomes a participant in the LRP only upon the Secretary and the individual entering into a written contract described in subsection (f) of this section." 25 U.S.C. § 1616a(e)(1) (emphasis added). Subsection (f) dictates the terms to be included in this "written contract." Id. § 1616a(f). The express language of the statute makes clear that Congress authorized only written, not oral, contracts for loan repayment under IHS LRP.

Mr. Ruttenburg however, does not allege that he entered into a written contract with IHS to participate in the IHS LRP, and receive $30,000 per year toward his educational loan balance plus 31 percent of that amount in income tax relief. Instead, he alleges that he entered into an "oral contract" for such terms through his discussions with Ms. Mendoza. See Compl. ¶ 16. Under the terms of the Indian Health Care Improvement Act, as amended, IHS lacks the authority to enter into such an oral contract.

Moreover, the statute and regulations set up such detailed procedures for participation in IHS LRP that effectively precludes the authority of IHS employees to enter into contracts with applicants though more informal methods (such as by offering oral assurances). In order to become involved in IHS LRP, a health care professional that meets the program criteria must

submit an application for a contract to the Secretary. 25 U.S.C. § 1616a(b). See Availability of Funds for Loan Repayment of Program for Repayment of Health Professions Educational Loans, 64 Fed. Reg. 53,681, 53,682 (Oct. 4, 1999); Availability of Funds for Loan Repayment of Program for Repayment of Health Professions Educational Loans, 63 Fed. Reg. 54,483, 54,484 (Oct. 9, 1998). These documents must contain certain terms and provisions mandated by statute. See 25 U.S.C. § 1616a(f). Prior to the Secretaries' written approval of these documents, the statute provides that an applicant is not yet a participant in IHS LRP, and has no contract to participate in the program. See 25 U.S.C. § 1616a(e)(1).

Mr Ruttenburg submitted an application for a contract to IHS in 1997. Compl. ¶ 3. The draft contract contained the provisions mandated by statute and clearly stated above the applicant's signature line that "[t]he Secretary or his/her authorized representative must sign this contract before it becomes effective." See Def.'s App. at 8. This contract, however, was never signed or approved by the Secretary or an authorized representative. Instead, Mr. Ruttenburg alleges that he entered the program through the alleged oral representations of Ms. Mendoza. Such representations, however, are better characterized as part of IHS's role in disseminating information about applying to the program, rather than part of the contract approval process. Compare 25 U.S.C. § 1616a(c) (application) with 25 U.S.C. § 1616a(c) (approval).

For the above reasons, this Court should dismiss Mr. Ruttenburg's complaint for failure to state a claim upon which relief may be granted, because Mr Ruttenburg has failed to allege the elements of a valid breach of contract claim.

### C. Even If IHS Had The Authority To Enter Into An Oral Agreement With Mr. Ruttenburg, Such Oral Agreement Between The Parties Would Be Invalid And Unenforceable

Even if the IHS had the authority to enter into an oral agreement concerning IHS LRP, the existence of subsequent written contracts renders the prior oral agreement invalid and unenforceable. In certain circumstances, "a separate, prior oral agreement may be valid if it serves as consideration or inducement for a subsequent written contract and does not vary the terms of the written contract." Prestex, Inc. v. United States, 3 Cl. Ct. 373, 378 (1938) (emphasis added) (citing McCloskey v. United States, 66 Ct. Cl. 105, 127 (1928). However, a prior oral agreement is invalid and unenforceable when it conflicts with or varies the terms of the written contract. Prestex, Inc., 3 Cl. Ct. at 378. See also Hazeltine Corp. v. United States, 10 Cl Ct. 417 (1986).

In his complaint, Mr. Ruttenburg alleges that he entered into an oral contract with IHS to receive $30,000 per year toward his educational loan balance plus 31 percent of that amount in income tax relief under the IHS LRP. Compl. ¶ 6. Nevertheless, he also subsequently signed several express written contracts with the Government covering the periods 2000 through 2003 that provided that the program will only repay $20,000 per year toward educational loan balances plus 20 percent of that amount in income tax relief. App. at 14-17, 18-21, 22-25. See also Compl. ¶ 12. The alleged oral agreement clearly conflicts with and varies the terms of the subsequent express oral contract, and therefore is invalid and unenforceable.[4]

[4] Moreover, to the extent that Mr. Ruttenburg asserts the existence of an implied-in-fact contract, "[a]s a general rule, there can be no implied contract where there is an express contract between the parties covering the same subject." Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 673, 428 F.2d 1241, 1255 (1970). See also Habermann v. United States, 26 Cl. Ct. 1405, 1411 n.3 (1992).

III. The Court Lacks Tucker Act Jurisdiction To Entertain the Second Count (Specific Performance) of Mr. Ruttenburg's Complaint

This Court is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table). Its jurisdiction to entertain claims and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). The waiver of sovereign immunity, and hence the consent to be sued, must be expressed unequivocally and cannot be implied. Id. Jurisdiction in this Court must be construed strictly and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980). As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983).

In this Court, consent to suit is generally based upon the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397. Pursuant to this statute, sovereign immunity is waived only with respect to "claim[s] against the United States" that are "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

In his complaint, Mr. Ruttenburg asserts a claim for specific performance of the alleged oral contract for "as long as plaintiff continues to be a participant in IHSLRP at Maniilaq

Association." Compl. ¶¶ 20-22. The Court of Federal Claims, however, is without jurisdiction over claims for specific performance. See First Hartford Corp. v. United States, 194 F.3d 1279, 1294 (Fed.Cir.1999) (reaffirming that the United States Court of Federal Claims "cannot grant nonmonetary equitable relief such as an injunction or a declaratory judgment, or specific performance.").With certain strictly limited exceptions, there is no provision in the Tucker Act authorizing this Court to order equitable relief. See United States v. King, 395 U.S. 1, 4 (1969) ("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction'"). But see 28 U.S.C. § 1491(b)(2) (permitting the Court of Federal Claims to grant declaratory and injunctive relief in actions regarding government solicitations). Mr. Ruttenburg does not allege that his claim falls into one of these limited exceptions; he merely asserts a claim based on the breach of an alleged oral contract. Accordingly, this Court should dismiss the second count of Mr. Ruttenburg's complaint for lack jurisdiction.

## CONCLUSION

For these reasons, the United States respectfully requests that this Court dismiss the plaintiff's complaint for failure to state a claim upon which relief may be granted or, in the alternative, grant the United States summary judgment in its favor. In the event that the Court does not dismiss plaintiff's complaint in its entirety, the defendant respectfully requests that this Court dismiss the second count of plaintiff's complaint (specific performance) for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 307-1011

February 27, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 27th day of February, 2004, a copy of the foregoing Motion to Dismiss, or, in the Alternative, for Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that this 27th day of February, 2004, I caused to be served by United States mail (first class, postage prepaid) copies of "DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT" addressed as follows:

James Geagan
Law Offices of James Geagan
846 Broadway
Sonoma, CA 95476

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice