ORIGINAL

# In the United States Court of Federal Claims

FILED
MAR 25 2005
U.S. COURT OF FEDERAL CLAIMS

No. 03-2523C
(Filed March 25, 2005)

| | |
|---|---|
| BRUCE RUTTENBURG, Plaintiff, v. THE UNITED STATES, Defendant. | **Indian Health Care Services Act, 25 U.S.C. § 1616a; Contract governing student loan repayment; Implied-in-fact contract; Authority of government agent; Specific performance.** |

James Geagan, Sonoma, California, for Plaintiff.

Peter D. Keisler, David M. Cohen, Deborah A. Bonum, Steven M. Maer, U.S. Department of Justice, Commercial Litigation Branch, Washington, D.C., for Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

**WILLIAMS**, Judge.

### Introduction

Plaintiff claims Defendant breached an alleged oral implied-in-fact contract and seeks damages of $61,200, plus interest. Plaintiff asserts that an official with the Indian Health Services ("IHS") orally promised that if he took a position as a full-time psychologist with the Maniilaq Association in Kotzebue, Alaska, the IHS would pay Plaintiff the sum of $30,000 per year towards his student loan balance, plus thirty-one percent of that amount to be paid towards his income tax liability incurred due to the loan repayment. Plaintiff further asserts that Defendant's subsequent conduct–an erroneous overpayment consistent with the alleged oral representations of the IHS representative but inconsistent with the terms of the written agreement executed by the parties--transformed the oral promise into an implied-in-fact contract that supercedes his written contracts with the IHS. In addition, Plaintiff asserts that the loan repayments and income tax contributions he received pursuant to the terms of the executed written contracts, which amounted to the yearly sum of $20,000 towards his student loan balance plus twenty percent of that amount applied to his

income tax liability, constitute breaches of the alleged oral agreement.

In addition, Plaintiff's Complaint asserts a second cause of action for specific performance. Defendant moves to dismiss Plaintiff's breach of contract cause of action for failure to state a claim upon which relief can be granted or in the alternative, seeks summary judgment. Defendant further moves to dismiss Plaintiff's cause of action for specific performance on the grounds that this Court lacks subject matter jurisdiction over such a claim.

Defendant's motion for summary judgment as to Plaintiff's claim for breach of contract is granted. The Court finds that as a matter of law, there was no implied-in-fact contract between the parties and that the parties' relationship was governed by the series of written contracts which were properly executed and adhered to by the parties. In addition, the Court grants Defendant's motion to dismiss Plaintiff's claim for specific performance because this Court lacks subject matter jurisdiction over such a cause of action.

## Factual Background[1]

The IHS is an agency within the Public Health Service of the United States Department of Health and Human Services. The Indian Health Service Loan Repayment Program ("IHSLRP") is a program administered by the IHS. The IHSLRP was created pursuant to Section 108 of the Indian Health Care Services Act, (the "Act"), as amended, "in order to assure an adequate supply of trained health care professionals necessary to maintain accreditation of, and provide healthcare services to, Indians through, Indian health programs." 25 U.S.C. § 1616a(a)(1). The Act further requires that all contracts between participating health care service providers and the IHSLRP be in writing and stipulates that such written contracts are not enforceable unless they are executed by the Secretary of Health and Human Services or a duly authorized representative. 25 U.S.C. § 1616a(e)(1). Finally, the Act specifies that a health care provider can become a participant in the IHSLRP <u>only</u> upon "the Secretary and the individual entering into a written contract described in [the Act]." 25 U.S.C. § 1616a(e)(1).

In 1997, Plaintiff, Bruce Ruttenburg, was licensed as a psychologist by the State of California and employed in private practice in Santa Rosa, California. On October 10, 1997, Plaintiff applied to participate in the IHSLRP. Included in the application packet was a draft contract, which Plaintiff signed (the "1997 draft contract"). Immediately above the signature line, the 1997 draft contract states in bold, capital letters:

> I UNDERSTAND THAT ANY FINANCIAL OBLIGATION OF THE UNITED STATES ARISING OUT OF THIS CONTRACT IS CONTINGENT UPON FUNDS BEING APPROPRIATED BY CONGRESS FOR THIS LOAN REPAYMENT PROGRAM. THE

---

[1] For the purpose of deciding this motion, the Court relies upon Plaintiff's Complaint, dated October 27, 2003, the Affidavit of Bruce Ruttenburg, dated April 27, 2004 ("Ruttenburg Aff't."), and the documents in the Appendix to Defendant's Motion to Dismiss Or, In The Alternative, For Summary Judgment ("Defendant's Appendix").

> SECRETARY OR HIS/HER AUTHORIZED REPRESENTATIVE MUST SIGN THIS CONTRACT BEFORE IT BECOMES EFFECTIVE. FURTHER, I UNDERSTAND THAT ANY INDEBTEDNESS I INCUR PRIOR TO BOTH PARTIES, THE SECRETARY AND MYSELF, SIGNING THIS CONTRACT IS MY RESPONSIBILITY.

Defendant's Appendix at 8.

Neither the Secretary of the United States Department of Health and Human Services nor an authorized representative of the Secretary ever signed the 1997 draft contract.

Plaintiff was not selected to participate in the IHSLRP in 1997 or 1998. Thereafter, in March 1999, an IHS employee, Carla Mendoza, contacted Plaintiff regarding an opening for a full-time psychologist with the Maniilaq Association of Kotzebue, Alaska. Plaintiff claims that in April 1999, Ms. Mendoza orally represented that if Plaintiff took the position with the Maniilaq Association–in addition to the salary the Maniilaq Association would pay to him--IHSLRP would pay $30,000 per year of his student loan balances plus thirty-one percent of this amount toward his increased income tax liability. Plaintiff concedes that Ms. Mendoza further informed him that he would not be eligible to participate in the IHSLRP in 1999, because the program funding for the year was exhausted. Specifically, Plaintiff described his conversation with Ms. Mendoza:

> Ms. Mendoza was identified as the specialist dealing with mental health provider applicants for IHSLRP and was the sole contact person for my participation in the Program. She advised that the loan repayment program of $30,000/31% would not be available to me for fiscal year 1999 even if I accepted the position at Maniilaq Association and began working there in 1999 because all of the available funds had been exhausted. I advised her that if I were to accept the Maniilaq position, I would have to begin working there on July 1, 1999. She and I had a discussion of the prospects for my receiving approval to participate in the program if I did accept the job at Maniilaq. Ms. Mendoza explained that Congress allocated the funds for the program on an annual basis, usually around November. She also explained that the IHS sites were rated for loan repayment by professional discipline and on an annual basis and that eligible applicants were awarded loan repayment based on the priority number assigned to their site by the IHS and the amount of funds that were made available by Congress. She advised that if I moved to Alaska and took a job with Maniilaq, I would be approved for loan repayment provided two conditions occurred first: first, that the Maniilaq Association would be deemed to be a qualified site by the IHS and second, that Congress re-funded the program. She advised that if these two conditions were met, the Indian Health Service would sign the contract I had already signed (for $30,000/31%) and

> I would receive the loan repayment proceeds as indicated in the contract. Ms. Mendoza indicated that she could certainly not guarantee the Maniilaq site would be approved for fiscal year 2000, but upon my direct questioning she did advise that the entity was a very high need area and that providers there had been consistently awarded loan repayment for at least the most recent 10 year period. She indicated she knew of no reason why Congress would not allocate funding for fiscal year 2000. I was never advised of any risk that the repayment benefit could be changed by the department unilaterally. I advised Ms. Mendoza that, given the set of circumstances, I would accept the position at Maniilaq. At all times during our discussions, the benefit discussed was the $30,000/31% benefit.

Ruttenburg Aff't. ¶ 5.

Based upon Ms. Mendoza's representations that Plaintiff would become a participant in the IHSLRP for 2000 at the rate of $30,000/31% repayment/tax benefit–subject to Congress appropriating the funding for the IHSLRP and the Maniilaq site being approved to participate in the program--Plaintiff moved to Alaska, and on July 1, 1999, commenced employment as a psychologist with the Maniilaq Association. Ruttenburg Aff't. ¶ 6.

Thereafter, in August 1999, Plaintiff was informed that pursuant to a change in the IHSLRP program structure, the IHSLRP contract for 2000 would only provide for a payment of $20,000 per year towards his student loans plus twenty percent of that amount to be paid towards his income tax. On October 4, 1999, the IHS published a notice in the Federal Register confirming that as of Fiscal Year 2000, the IHSLRP would only provide participants with "up to $20,000 per year...[and] an additional 20 percent of the participants total loan repayments to the Internal Revenue Service for the increased tax liability." 64 Fed. Reg. 53, 681 (October 4, 1999).

In response to this notification from the IHS, on December 15, 1999, Plaintiff, through his attorney, wrote to IHS employee Charles Yepa, and asserted that the reduction of the IHSLRP benefits from the levels Ms. Mendoza discussed with Plaintiff in April 1999 would constitute a breach of an oral contract between Plaintiff and the IHSLRP. Plaintiff's attorney further asserted that if Plaintiff did not receive benefits consistent with the 1999 IHSLRP levels, Plaintiff would commence legal action against the IHS.

Defendant did not respond to this letter and on February 20, 2000, Plaintiff received an IHSLRP contract for the next two fiscal years, 2000 and 2001. This contract was consistent with the notice published in the October 1999 Federal Register and expressly provided that the program would only repay $20,000 per year towards Plaintiff's student loans plus twenty percent of that amount towards his income tax liability. The agreement further stated in bold type face, immediately above the participant's signature line, that "[t]he Secretary or his/her authorized representative must sign this contract before it becomes effective. Further, I understand that any indebtedness I incur prior to both parties, the Secretary and myself, signing this contract is my responsibility."

Defendant's Appendix at 17.

On February 27, 2000, Plaintiff signed the agreement. On March 17, 2000, Phyllis Eddy, an IHS employee and the duly authorized representative of the Secretary of Health and Human Services ("HHS"), signed the contract on behalf of Defendant. Thereafter, despite the express terms of the contract executed by the parties, Plaintiff received notice from IHS that for fiscal year 2000, IHSLRP had paid $30,000 towards his student loan repayment and that he had been paid the sum of thirty-one percent of that amount to be applied to his income tax liability. Plaintiff, despite the existence of the express contractual agreement he made with IHSLRP, concluded that he was being paid pursuant to the oral discussion he had with Ms. Mendoza in April of 1999, and did not make any inquiries about the discrepancy between his payment and the express terms of his contract with the IHSLRP.

Thereafter, in June 2001, Defendant notified Plaintiff that he had been erroneously overpaid in 2000 and that his benefits for 2001 would conform with the express terms of his contract with IHSLRP and that the sum of the 2000 overpayment would be deducted from the 2001 payment. Defendant thereafter paid $8,700 towards Plaintiff's student loans for 2001. Plaintiff has not disputed that this sum equals the amount of payment called for in his express contract with IHSLRP minus the amount paid in excess of the express terms of that contract in 2000.

On May 20, 2002, Plaintiff signed a one-year contract extension with IHSLRP for fiscal year 2002. The 2002 contract again expressly limited Plaintiff's student loan repayments to $20,000 for the year plus twenty percent of that sum to be paid towards his income tax liability. On June 3, 2002, Phyllis Eddy of IHS again signed the contract as the duly authorized representative of the Secretary of HHS. Plaintiff was paid the sums set forth in the 2002 contract for fiscal year 2002.

On May 19, 2003, Plaintiff signed another one-year contract extension with IHSLRP for the fiscal year 2003. The 2003 contract also expressly limited Plaintiff's student loan repayments to $20,000 plus twenty percent of that amount to be paid toward his income tax liability. On June 6, 2003, Phyllis Eddy of IHS again signed the contract as the authorized representative of the Secretary of HHS. Plaintiff was paid pursuant to the express terms of the 2003 contract for fiscal year 2003.

On October 31, 2003, Plaintiff commenced the instant action seeking damages for breach of an alleged implied-in-fact oral contract he contends was created as a result of his discussions with Ms. Mendoza and the subsequent loan repayments and tax payments he received in fiscal year 2000. In addition, Plaintiff also asserts a cause of action seeking specific performance of the terms of the alleged implied-in-fact contract.

## Discussion

Standard of Review

Under Rule 56(c) of the Rules of the Court of Federal Claims ("RCFC"), summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See also Paxon Electric Company, Inc. v. United States, 14 Cl. Ct. 634, 642 (1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)); accord Mingus

Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). In ruling on a motion for summary judgment, a court does not weigh the evidence to determine the truth of the matter, but rather assesses whether there is a genuine issue for trial. Liberty Lobby, Inc., 477 U.S. at 248-249; Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002). Further, "'the inferences to be drawn from the underlying facts...must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

The movant bears the initial burden of establishing the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-movant then bears the burden of showing sufficient evidence of a material fact in dispute that would allow a fact finder to decide the case in its favor. Liberty Lobby, Inc., 477 U.S. at 256. It is not necessary that such evidence be admissible, but mere denials, conclusory statements or evidence that is merely colorable or not significantly probative will not defeat summary judgment. Id. at 249-50; Celotex Corp., 477 U.S. at 324; Mingus Constructors, Inc., 812 F.2d at 1390-91 (Fed. Cir. 1987).

Implied-in-Fact Oral Contract

In order to establish the existence of an express or implied-in-fact contract with the United States, a plaintiff must demonstrate: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) "the Government representative 'whose conduct is relied upon [had] actual authority to bind the government in contract." City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990) (quoting Juda v. United States, 6 Cl. Ct. 441, 452 (1984)), cert. denied, 501 U.S. 1230 (1991). Actual authority to contract is required to form a contract binding on the United States, and "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947).

The actual authority of a Government employee to enter into an oral contract may be limited by statute or regulation. See e.g., Hambert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998), cert. denied, 525 U.S. 1177 (1999); American Gen. Leasing, Inc. v. United States, 218 Ct. Cl. 367, 587 F.2d 54, 57-58 (1978)(holding that express oral agreement with the Government agent was not binding because, among other reasons, the applicable regulations required that a contract be in writing). As the Federal Circuit has stated:

> "[a] contracting officer, as agent of the executive department, has only that authority actually conferred upon him by statute or regulation. If, by ignoring statutory and regulatory requirements, he exceeds his actual authority, the Government is not estopped to deny the limitations on his authority, even though the private contractor may have [relied] on the contracting officer's apparent authority to his detriment, for the contractor is charged with notice of all statutory and regulatory limitations.

CACI, Inc. v. Stone, 990 F.2d 1233, 1236 (Fed. Cir. 1993) (quoting Presetex, Inc. v. United States,

162 Ct. Cl. 620, 625, 320 F.2d 367, 371 (1963).

The Indian Health Care Improvement Act, which governs the IHSLRP, requires that all contracts made pursuant to the IHSLRP be in writing. 25 U.S.C. § 1616a. This provision alone prevents enforcement of an oral contract purporting to establish Plaintiff's participation in the IHSLRP. Another provision within the Act also prevents enforcement of Plaintiff's purported oral contract because it specifies that "an individual becomes a participant in the [IHSLRP] only upon the Secretary and the individual entering into a written contract described in subsection (f) of this section." 25 U.S.C. § 1616a(e)(1). As such, Plaintiff could not have become a participant in the IHSLRP until both he and the Secretary's designee signed his contract–which occurred in 2000 and set forth the $20,000/20% repayment/tax terms. Ms. Mendoza's earlier oral representations did not meet the statutory requirements for formation of a contract under the IHSLRP. Plaintiff, by virtue of the express terms of the written contracts he executed with IHSLRP had notice of both of these requirements, and even if such provisions were not contained in the written contracts, Plaintiff is still "charged with notice of all statutory and regulatory limitations." CACI, Inc. v. Stone, 990 F.2d 1233, 1236 (Fed. Cir. 1993).

Despite the clear and unambiguous language of this statute and the express provisions setting forth the statutory written contract requirements included in the written IHSLRP contracts Plaintiff executed, Plaintiff asserts that an implied-in-fact oral contract, which supercedes the written agreements he executed, was created by conversations he had with IHS employee Ms. Mendoza coupled with IHS's error in making a larger loan repayment on Plaintiff's behalf in fiscal year 2000 than those set forth in his written contract.

Aside from the clear and unambiguous language of the Indian Health Care Improvement Act and the express terms in Plaintiff's IHSLRP contract, Plaintiff's conversations with Ms. Mendoza coupled with IHSLRP's erroneous 2000 loan repayment did not create the implied-in-fact oral contract Plaintiff seeks to construct. There was no intent evidenced on Ms. Mendoza's part to unconditionally bestow upon Plaintiff the $30,000/31% repayment/tax benefit at that point in time. She made no legally binding offer. In his Affidavit, Plaintiff admits that Ms. Mendoza explicitly advised him that she could not guarantee that Congress would even allocate funding for the Maniilaq Association in the future. Under such circumstances, this Court cannot conclude that Ms. Mendoza made promises to the Plaintiff as to the future loan repayments he would receive. Nor did IHS's erroneous overpayment obligate IHS to pay Plaintiff above the level set by the statutory authorizations.

Plaintiff's express written contracts with the IHSLRP covering the loan repayment necessarily defeat his claim that an oral contract providing greater benefits arose as a result of Ms. Mendoza's statements and the government's erroneous payment. The subject matter of Plaintiff's alleged oral implied-in-fact contract and express written contract with IHSLRP dealt with identical subject matter–the student loan repayments Plaintiff was to receive in exchange for working at the Maniilaq Association. As the Federal Circuit has repeatedly held "[i]t is well-settled that the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is unrelated to the express contract." Schism v. Florida, 316 F.3d 1259, 1278 (Fed. Cir. 2002); See also, Atlas Corp. V. United States, 895 F.2d

745, 754-55 (Fed. Cir. 1990).

Specific Performance

Subject matter jurisdiction may be challenged at any time by the parties, the Court sua sponte, and even on appeal. Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993); Holland v. United States, 57 Fed. Cl. 540, 551 (2003). Plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence. Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

The Tucker Act both confers jurisdiction upon the United States Court of Federal Claims and waives sovereign immunity with respect to certain actions for monetary relief brought against the United States. See United States v. Mitchell, 463 U.S. 206, 212-18 (1983); Fisher v. United States, 364 F.3d 1372, 1376 (Fed. Cir. 2004). Under the Tucker Act, sovereign immunity is waived for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the waiver of sovereign immunity, and the resulting consent to be sued, must be expressed unequivocally and cannot be implied. United States v. Testan, 424 U.S. 392, 399 (1976). As the Federal Circuit has noted "[i]n construing a statute waiving sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Construction Co. V. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983), cert. denied, 464 U.S. 826 (1983).

In the instant matter, Plaintiff's seeks specific performance of the alleged oral implied-in-fact contract for "as long as plaintiff continues to be a participant in IHSLRP at Maniilaq Association." However, with the exception of certain and strictly limited exceptions set forth in 28 U.S.C. § 1491(b)(2), which are inapplicable here, this Court is not vested with the authority to order equitable relief such as specific performance. See e.g., 28 U.S.C. § 1491(b)(2) (permitting the Court of Federal Claims to grant declaratory and injunctive relief in bid protest actions); United States v. King, 395 U.S. 1, 4 (1969)("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction'"); First Hartford Corp. v. United States, 194 F.3d 1279, 1294 (Fed. Cir. 1999)(with the exception of the carve out in 28 U.S.C. § 1491(b)(2), the United States Court of Federal Claims "cannot grant nonmonetary equitable relief such as an injunction or declaratory judgment, or specific performance.")

**Conclusion**

1. Defendant's Motion for Summary Judgment as to Plaintiff's claim for breach of contract is **GRANTED.**

2. Defendant's Motion to Dismiss Plaintiff's claim for specific performance is **GRANTED.**

3. The Clerk is directed to dismiss this action. No costs.

Mary Ellen Coster Williams

**MARY ELLEN COSTER WILLIAMS**
**Judge**